IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK DOUGLAS, | : | |
|     Plaintiff | : | |
| | : | No. 1:16-cv-01836 |
| v. | : | |
| | : | (Judge Kane) |
| MAJOR WESLEY E. NESBIT, et al., | : | |
|     Defendants | : | |

**MEMORANDUM**

Before the Court is a motion to dismiss Plaintiff Mark Douglas' amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, filed by Defendants Brigadier General Anthony J. Carrelli and Deborah Nesbella. For the reasons provided herein, the Court will grant Defendants' motion to dismiss.

**I.    BACKGROUND**[1]

Plaintiff Mark Douglas commenced this action on September 6, 2016 through the filing of a complaint against Defendants Major General Wesley E. Nesbit, Brigadier General Anthony J. Carrelli and Deborah Nesbella, alleging race and age discrimination in the context of his previous employment with the Pennsylvania Department of Military and Veterans Affairs as a unit clerk at the Hollidaysburg Veterans Home.[2] (Doc. No. 1.) On December 21, 2016, Plaintiff filed an amended two-count, six-page complaint.[3] (Doc. No. 6.)

---

[1] The following factual allegations comprising this background section are taken directly from Plaintiff's complaint and are accepted as true for purposes of this motion to dismiss. See Schuylkill Energy Res., Inc. v. Pa. Power & Light Co., 113 F.3d 405, 417 (3d Cir. 1997) (explaining that "[w]hen reviewing a Rule 12(b)(6) dismissal, [the court] must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them").

[2] Notably, this is Plaintiff's third attempt at litigating an action based on the underlying facts in this case. See Mark Douglas v. Dep't of Military & Veterans Affairs, et al., Doc. No. 1:14-cv-

1

In his amended complaint, Plaintiff alleges that on or about March 17, 2012, he was hired by "Defendant or [the] person she was responsible for as a [u]nit [c]lerk . . . ." (Id. at ¶ 6.) Plaintiff avers that on or about September 4, 2012, "Defendant's agents met with Plaintiff in a pre-disciplinary conference." (Id. at ¶ 7.) According to the amended complaint, Plaintiff was provided with employee evaluations, which rated his work as "unsatisfactory." (Id.) Plaintiff asserts that, following this "pre-disciplinary conference," he was notified that he would be terminated from employment effective September 10, 2012 due to his "poor performance." (Id. at ¶ 8.) Plaintiff appears to contest that Defendants failed to comply with certain disciplinary procedures prior to his termination. [4] (Id. at ¶ 9.) He further provides that "[o]ut of the five unit clerks in Plaintiff's department," Plaintiff was the only African American unit clerk employed at the Hollidaysburg Veterans home over the age of 50. Plaintiff brings his claims of race discrimination and age discrimination "in the form of wrongful discharge in violation of 42 U.S.C. § 1981 governing employment actions brought against state actors and 42 U.S.C. § 1981 governing employment actions through 42 U.S.C. § 1983." (Id. at ¶¶ 20, 28.)

---

00297 (M.D. Pa. 2014); Mark Douglas v. Dep't of Military & Veterans Affairs, et al., Doc. No. 1:15-cv-01740 (M.D. Pa. 2015).

[3] Plaintiff amended the caption of his complaint to name Deborah Nesbella as a Defendant in her individual capacity.

[4] Specifically, Plaintiff alleges as follows:

> Prior to the pre-disciplinary conference, Plaintiff was not given notice of any performance evaluations despite the fact that he was given a report that was purportedly his 90 day evaluation. The purported 90-day evaluation was not given to Plaintiff or was he aware of the reports existence prior to a later grievance hearing held in January 2013.

(Id. at ¶ 9.)

Defendants Brigadier General Anthony J. Carrelli and Deborah Nesbella have filed a motion to dismiss Plaintiff's amended complaint. (Doc. No. 8.) Having been fully briefed, this matter is now ripe for disposition.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The legal standards governing pleading practice in federal court have shifted to a "more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To avoid dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.  Id.  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  Indeed, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 679  (2009) (citing Fed. R. Civ. P. 8(a)(2)). Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when evaluating the sufficiency of a complaint's allegations as tested against a Rule 12(b)(6) motion: (1) identify the elements a plaintiff must plead to state a claim; (2) discard any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained

in the complaint "plausibly give rise to an entitlement to relief." See <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In evaluating whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all factual allegations in the complaint, and construe all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff. See <u>In re Ins. Brokerage Antitrust Litig.</u>, 618 F.3d 300, 314 (3d Cir. 2010). A court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss," <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997), and must disregard any "formulaic recitation of the elements of a cause of action." <u>Twombly</u>, 550 U.S. at 555. Additionally, a court may not assume that a plaintiff can prove facts that the plaintiff has not alleged. <u>Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). In deciding a Rule 12(b)(6) motion, the court may consider, in addition to the facts alleged on the face of the complaint, any exhibits attached to the complaint, "any matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." <u>Buck v. Hampton Twp. Sch. Dist.</u>, 452 F.3d 256, 260 (3d Cir. 2006) (citation and quotation marks omitted).

### III. DISCUSSION

#### A. <u>Sua Sponte Dismissal of Defendant Major General Wesley E. Nesbit</u>

As an initial matter, the Court observes that Defendant Major General Wesley E. Nesbit is subject to dismissal from this action for failure to serve process within 90 days of filing the complaint as required by Rule 4(m) of the Federal Rules of Civil Procedure.

The amended provision of Rule 4(m) governing the time limit for service of process following the filing of a complaint, effective December 1, 2015, provides as follows:

> **(m) Time Limit for Service**. If a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Rule 4(m) mandates that the district court dismiss a complaint after notice to the plaintiff if service of the complaint is not made upon a defendant within 90 days after initiating the action.

Here, Plaintiff commenced the above-captioned action on September 6, 2016. (Doc. No. 1.) On December 9, 2016, the Court, observing that Plaintiff had not yet submitted proof of service of the summons and complaint upon Defendants within the 90-day period prescribed by Rule 4(m), entered an Order directing Plaintiff to show cause why the above-captioned action should not be dismissed for failure to prosecute. (Doc. No. 4.) That same day, Plaintiff responded to the Court's Show Cause Order by submitting proof of summons, which revealed that summons was returned unexecuted as to Defendant Nesbit, with the notation: "this person does not exist." (Doc. No. 5 at 4.) The docket reflects that, to date, no further attempt has been made by Plaintiff to serve Defendant Nesbit pursuant to Rule 4.

By the Court's calculation, more than 180 days have elapsed since the complaint in this action was filed. Despite having received notice of a possible sua sponte dismissal for failure to timely serve the complaint on all Defendants, including Defendant Nesbit, Plaintiff has failed to effectuate proper service of the complaint on Defendant Nesbit. Significantly, Plaintiff has made no request during this period for an extension of time to properly serve Defendant Nesbit, nor has he demonstrated good cause for the failure to effect timely service.[5] In the absence of a

---

[5] The Court, in the absence of "a finding of good cause, . . . may in its discretion still dismiss the case, even after considering that the statute of limitations has run and the refiling of an action is barred." Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1306 (3d Cir. 1995).

finding of good cause for the failure to serve Defendant Nesbit within the required 90-day timeframe, the Court declines to exercise its discretion to extend the time for service and consequently, will <u>sua sponte</u> dismiss this action as to Defendant Major General Wesley E. Nesbit.

      B.     <u>OFFICIAL CAPACITY CLAIMS AGAINST DEFENDANT BRIGADIER GENERAL ANTHONY J. CARRELLI</u>

It appears from Plaintiff's amended complaint that Plaintiff has asserted claims of age and race discrimination against Defendant Brigadier General Anthony J. Carrelli "in his capacity as Adjutant General of Pennsylvania and of the Department of Military and Veterans Affairs." (Doc. No. 6 at 1.)  Defendants move for dismissal of all claims brought against Defendant Carrelli in his official capacity on Eleventh Amendment sovereign immunity grounds.  (Doc. No. 9 at 8.)

The Court agrees with Defendants that the Eleventh Amendment clearly precludes Plaintiff's official capacity claims against Defendant Carrelli.  It is well settled that a suit brought against a state official in his official capacity is deemed a suit against the state.  <u>Kentucky v. Graham</u>, 472 U.S. 159, 166 (1985).  Indeed, where a state official is sued in an official capacity, the Supreme Court of the United States has held that the real party in interest is the government entity of which the official is an agent.  <u>Hafe v. Melo</u>, 502 U.S. 21, 26 (1991).  Here, Plaintiff's official capacity suit against Defendant Carrelli is, in effect, a suit against the Pennsylvania Department of Military and Veterans Affairs, an agency of the Commonwealth of Pennsylvania.  <u>See</u> 51 Pa. C.S. § 703.  A suit against an arm of the state, such as the Pennsylvania Department

of Military and Veterans Affairs, is no different from a suit against the state itself.[6] Thus, the Eleventh Amendment forecloses Plaintiff's claim for damages against Defendant Carrelli in his official capacity, as the Eleventh Amendment operates as a bar to actions in federal court brought against states, state agencies, and state officials acting within the scope of his or her official capacities, absent waiver or abrogation of said immunity.[7] Graham, 473 U.S. at 165-67; Hans v. Louisiana, 134 U.S. 1, 10 (1890); see U.S. Const. amend. XI (precluding suits "in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State"). Accordingly, Plaintiff is barred from recovering against Defendant Carrelli in his official capacity, as the Commonwealth of Pennsylvania is immunized from suit under the Eleventh Amendment. Krause v. Pa. Dep't of Military & Veterans Affairs, No. 1:11-CV-1080, 2011 WL 6742519, at *3 (M.D. Pa. Dec. 22, 2011).

Accordingly, the Court will grant Defendants' motion to dismiss Defendant Brigadier General Anthony J. Carrelli from the above-captioned action with prejudice.[8]

C. COUNT I- RACIAL DISCRIMINATION[9]

---

[6] The Pennsylvania Department of Military and Veterans Affairs is "responsible for the administration and supply of the Pennsylvania military forces" and has "general supervisory function of all matters pertaining thereto." 51 Pa. C.S. § 703.

[7] The Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity, 42 Pa. C.S. § 8521, and Congress has not abrogated states' immunity for actions brought under Section 1981, Boykin v. Bloomsburg Univ. of Pa., 893 F. Supp. 378, 394 (M.D. Pa. 1995), aff'd, 91 F.3d 122 (3d Cir. 1996).

[8] Plaintiff has also named Major General Wesley E. Nesbit as a Defendant in the caption of the amended complaint "in his capacity as Adjutant General of Pennsylvania and of the Department of Military and Veterans Affairs." In addition to Plaintiff's failure to effect proper service of the amended complaint on Defendant Nesbit, the Court notes that Defendant Nesbit is entitled to sovereign immunity with respect to Plaintiff's official-capacity claims asserted against him.

[9] Notably, the amended complaint does not specify what alleged acts of misconduct are attributable to whom. Indeed, Plaintiff does not identify any Defendant by name, but rather vaguely refers to the individuals named in the caption of the amended complaint as "Defendant"

Count I of Plaintiff's amended complaint asserts a claim of unlawful race discrimination "in the form of wrongful discharge in violation of 42 U.S.C. § 1981 governing employment actions brought against state actors and 42 U.S.C. § 1981 governing employment actions through 42 U.S.C. § 1983." (Doc. No. 6 at 4-5 ¶ 20.)  Defendants urge the Court to dismiss Count I of the amended complaint on the basis that Plaintiff's race discrimination claim  (1) is untimely (Doc. No. 9 at 4), and (2) does not sufficiently allege Defendant Deborah Nesbella's personal involvement in the alleged adverse employment action taken against Plaintiff (Id. at 6). The Court addresses these arguments in turn.

42 U.S.C. § 1981 proscribes intentional discrimination based upon race in the making and enforcement of contracts. Rivers v. Roadway Exp., Inc., 511 U.S. 298, 302 (1994); see 42 U.S.C. § 1981 ("All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . ."). The statute, amended by the Civil Rights Act of 1991, embraces an expansive definition of "make and enforce contracts" to include the "making, performance, modification, and termination of contracts, and the employment of all benefits, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).  While Section 1981 confers a direct cause of action for claims brought against private individuals, "no implied private right of action exists against state actors under [Section] 1981." McGovern v. City of Phila., 554 F.3d 114, 122 (3d Cir. 2009).  Rather, 42 U.S.C. § 1983 provides the exclusive federal damages remedy for

---

or collectively as "Defendants" throughout his pleading.  However, in light of its dismissal of Defendants Major General Wesley E. Nesbit and Brigadier General Anthony J. Carrelli from this action, the Court construes Count I of the amended complaint as asserted against remaining Defendant Deborah Nesbella.

violations of rights guaranteed by Section 1981 with respect to alleged violations pressed against a state actor. Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735 (1989); see also Ford v. Se. Pa. Trans. Auth., 374 F. App'x 325, 326 (3d Cir. 2010) ("[T]he exclusive remedy for relief from a state agency for civil rights violations, including race discrimination, is [Section] 1983.").

Here, Plaintiff asserts a Section 1981 race discrimination claim against Defendant Deborah Nesbella, Commandant of the Hollidaysburg Veterans Home (a state owned facility), through Section 1983. The parties do not dispute that Defendant Deborah Nesbella is a state actor. Rather, Defendants argue that Plaintiff's race discrimination claim is time-barred by Pennsylvania's two-year statute of limitations governing personal injury actions applied to violations of Section 1981 through Section 1983.

Although the Third Circuit has yet to address whether Section 1981 employment actions brought against state actors through Section 1983 are subject to a two- or four- year statute of limitations, Walker v. City of Coatesville, No. CIV.A. 14-853, 2014 WL 6698304, at *1 (E.D. Pa. Nov. 26, 2014), district courts in this Circuit, relying on the United States Court of Appeals for the Eleventh Circuit's holding in Baker v. Birmingham, 531 F.3d 1336 (11th Cir. 2008), have consistently rejected invitations to import Pennsylvania's two-year statute of limitations governing personal injury actions under 42 Pa. C.S. § 5524, applied to Section 1983 claims, to those claims brought under Section 1981 through Section 1983. See, e.g., Walker, 2014 WL 6698304, at *4 (collecting cases); Hills v. Borough of Colwyn, 978 F. Supp. 2d 469, 477 (E.D. Pa. 2013) (collecting cases). Having considered this prevailing line of cases, the Court finds no reason to adopt a contrary position to that embraced by courts in this district and thus, applies the statute of limitations governing claims brought directly under Section 1981 to Plaintiff's race discrimination claim.

This does not end the inquiry, however. Claims based on independent violations of Section 1981 are subject to either (1) Pennsylvania's two-year limitations period for personal injury actions under 42 Pa. C.S. § 5524, or (2) the federal catchall statute of limitations under 28 U.S.C. § 1658. Deciphering the controlling statute of limitations applicable to claims brought under Section 1981 requires the court to look to the nature of the underlying right asserted. Specifically, Section 1981 claims predicated on conduct that occurred post-contract formation are subject to 28 U.S.C. § 1658's four-year statute of limitations.[10] Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 381 (2004). Stated differently, Section 1968 supplies a four-year statute of limitations for claims that would not have been cognizable or available under Section 1981 prior to the enactment of the Civil Rights Act of 1991. Id. In contrast, Section 1981 claims that would have been actionable under the pre-1990 version of Section 1981 borrow from Pennsylvania's two-year statute of limitations applied to personal injury actions. Id.

Applying this bright-line rule to the matter sub judice, the Court finds that Section 1658 controls Plaintiff's claim of race discrimination brought under Section 1981 through Section 1983. Indeed, Plaintiff's claim of race discrimination is grounded on allegations of wrongful termination. Such allegations of wrongful termination arise under the Civil Rights Act of 1991, which amended Section 1981 by expanding the definition of "make and enforce contracts" to include certain post-formation conduct; namely, the performance, modification, and termination of contracts. Thus, Plaintiff's claim is subject to a four-year statute of limitations. According to

---

[10] In 1990, Congress enacted Section 1658, which applies a "catchall" four-year statute of limitations period to any "civil action arising under an Act of Congress enacted after" December 1, 1990. While Section 1981 was originally enacted by the Civil Rights Act of 1866, it was subsequently amended by the Civil Rights Act of 1991. Thus, post-contract formation discrimination, made actionable under Section 1981 through the Civil Rights Act of 1991, is subject to Section 1658's four-year statute of limitations.

the allegations in the amended complaint, Plaintiff's cause of action began accruing on September 10, 2012—the date of Plaintiff's termination from his employment. (Doc. No. 6 at 3 ¶ 9.) As Plaintiff commenced this action on September 6, 2016, four days prior to the expiration of the four-year statute of limitations period, Plaintiff's Section 1981 claim is deemed timely.

In addition to their argument that the statute of limitations operates as a bar to Plaintiff's claim of race discrimination in termination brought under Section 1981 through Section 1983, Defendants have also raised in their motion to dismiss a secondary argument for dismissal of Count I of Plaintiff's amended complaint. Specifically, Defendants assert that dismissal of Defendant Nesbella is appropriate for lack of personal involvement in the alleged acts underlying Plaintiff's claimed violation of his rights under Section 1981. To state a prima facie case of race discrimination under Section 1981, a plaintiff must plead sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence as to each of the following elements: "(1) plaintiff is a member of a racial minority; (2) defendant intended to discriminate on the basis of race; and (3) defendant's discrimination concerned one or more of the activities enumerated in the statute, which includes the right to make and enforce contracts."[11] Suero v. Motorworld Auto. Grp., Inc., No. 3:16-CV-00686, 2017 WL 413005, at *6 (M.D. Pa. Jan. 31, 2017) (citing Brown v. Philip Morris Inc., 250 F.3d 789, 797 (3d Cir. 2001)).

As against an individual defendant, however, a plaintiff must also plead the defendant's personal involvement in the alleged discriminatory conduct at issue. The Third Circuit has instructed that individual liability under Section 1981 may lie where the employees were

---

[11] The substantive elements of a race discrimination claim brought under Section 1981 are nearly identical to the elements comprising an employment discrimination claim brought under Title VII, and are analyzed in accordance with the familiar three-step burden-shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Brown v. J. Kaz, Inc., 581 F.3d 175, 181 (3d Cir. 2009).

"personally involved in the discrimination . . . and . . . intentionally caused [an infringement of plaintiff's] Section 1981 rights, or if they authorized, directed, or participated in the alleged discriminatory conduct . . . ." Al-Khazraji v. St. Francis Coll., 784 F.2d 505, 518 (3d Cir. 1986); see also Johnson v. Res. for Human Dev., Inc., 843 F. Supp. 974, 978 (E.D. Pa. 1994) ("[A] claim seeking to impose personal liability under Section 1981 must be predicated on the actor's personal involvement and there must therefore be some affirmative link to causally connect the actor with the discriminatory action."). As liability under Section 1981 is personal in nature, and hinges on allegations of intentional discrimination, it cannot be imposed vicariously. Boykin v. Bloomsburg Univ. of Pa., 893 F. Supp. 378, 394 (M.D. Pa. 1995), aff'd, 91 F.3d 122 (3d Cir. 1996). However, allegations demonstrating a supervisor's "deliberate indifference to, or participation in, a subordinate's acts of racially-motivated conduct can . . . give rise to individual liability under [Section] 1981." Suero, 2017 WL 413005, at *7 (citing Cardenas v. Massey, 269 F.3d 251, 269 (3d Cir. 2001)).

Accepting all allegations in the amended complaint as true, and viewing all reasonable inferences drawn therefrom in the light most favorable to Plaintiff, the Court finds dismissal of Count I to be appropriate, as the amended complaint is entirely devoid of factual allegations supporting Defendant Nesbella's personal involvement in the events or occurrences forming the basis of Plaintiff's Section 1981 race discrimination claim. Specifically, the amended complaint alleges the following with respect to Defendant Nesbella's personal involvement in Plaintiff's termination:

6.   On or about March 12, 2012 Plaintiff was hired by Defendant or person she was responsible for as a[ ] Unit Clerk . . . .

7.   On or about September 4, 2012 Defendant's agents met with Plaintiff in a pre-disciplinary conference in which Plaintiff was given employee evaluations in which his work was characterized as unsatisfactory.

> 8. After the pre-disciplinary conference, Plaintiff was notified that his employment would be terminated effective September 10, 2012 for "poor performance."
>
> . . .
>
> 10. Out of the five unit clerks in Plaintiff's department Plaintiff was the only black unit clerk employed at the Hollidaysburg Veterans Home.
>
> . . .
>
> 15. The reason Defendant cited for terminating Plaintiff, "poor performance[,]" was a pretext for discrimination.
>
> . . .
>
> 19. Plaintiff believes and therefore avers that Defendant's actions were due to Plaintiff's protected class of his race of African American.

(Doc. No. 6 at 2-4.) A review of these allegations reveals that Plaintiff has offered no plausible factual basis from which a reasonable inference could be drawn that Defendant Nesbella directly participated in, let alone was aware of and acquiesced in, the allegedly discriminatory termination decision forming the basis of Plaintiff's Section 1981 claim. Rather, as currently pled, it appears that Plaintiff has merely attempted to hold Defendant Nesbella personally culpable for her agents' alleged acts of misconduct, based solely on her supervisory status.

In addition to this pleading defect, the Court is hard pressed to find any plausible factual allegations in the amended complaint "from which a discriminatory animus on the part of the defendant might be inferred." Truong v. Dart Container Corp., CIV.A. 09–3348, 2010 WL 4237944, at *4 (E.D. Pa. Oct.26, 2010). As enumerated above, one of the elements of a 1981 "cause of action in the employment context . . . based on racial discrimination [requires that the plaintiff] set forth facts to establish that the allegedly disparate treatment was the result of 'intentional' or 'purposeful' discrimination.'" Hicks v. Arthur, 843 F. Supp. 949, 954 (E.D. Pa. 1994) (citing Weldon v. Kraft, 896 F.2d 793, 796 (3rd Cir. 1990); Armstrong v. Sch. Dist. of Phila., 597 F. Supp. 1309, 1312 (E.D. Pa. 1984)). Section 1981's proscription against purposeful

discrimination thus requires the impact of the alleged adverse employment action to be traceable to a discriminatory purpose. Evans v. Chichester Sch. Dist., 533 F. Supp. 2d 523, 537 (E.D. Pa. 2008) (citing Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 390 (1982).

Here, the amended complaint does not contain any allegations sufficiently suggestive of intent on the part of Defendant Nesbella to discriminate against Plaintiff on the basis of race. Rather, the sum total of the allegations in the amended complaint concerning Plaintiff's race is his averment that "[o]ut of the five unit clerks in Plaintiff's department[,] Plaintiff was the only black unit clerk employed at the Hollidaysburg Veterans Home," which does not give rise to a reasonable inference that Plaintiff's termination was racially motivated, and his asserted "belief" that he was fired due to his minority status, which is not entitled to the presumption of truth, especially in the absence of any fact-specific allegations of racial animus that would raise Plaintiff's right to relief above the speculative level. See, e.g., Clarke v. Eisenhower, 199 F. App'x 174, 175 (3d Cir. 2006) (affirming district court's dismissal of plaintiff's Section 1981 claim for failure to "allege facts that would support an inference that defendants intended to discriminate on the basis of race").

Accordingly, the Court will grant Defendants' motion to dismiss Count I of Plaintiff's complaint without prejudice.

    D.    COUNT II- AGE DISCRIMINATION

Count II of Plaintiff's amended complaint asserts a claim of unlawful age discrimination "in the form of wrongful discharge in violation of 42 U.S.C. § 1981 governing employment actions brought against state actors and 42 U.S.C. § 1981 governing employment actions through 42 U.S.C. § 1983." (Doc. No. 6 at 6 ¶ 28.)

As Defendants persuasively argue in their brief in support of their motion to dismiss, Plaintiff has failed to state a cognizable claim of age discrimination because the statute upon which he relies—Section 1981—does not support a cause of action premised upon discrimination on the basis of age. Rather, as this Court has previously noted, the Third Circuit has held that Section 1981, on its face, "is limited to issues of racial discrimination in the making and enforcing of contracts." Anjelino v. N.Y. Times Co., 200 F.3d 73, 98 (3d Cir. 1999). In like fashion, Plaintiff is also foreclosed from pursuing an age discrimination claim under 42 U.S.C. § 1983, as the Third Circuit has explicitly held that the exclusive federal remedy for claims of age discrimination in employment is the Age Discrimination in Employment Act ("ADEA"). Hildebrand v. Allegheny Cty., 757 F.3d 99, 108 (3d Cir. 2014) ("[W]e join with the majority of Courts of Appeals in concluding that Congress intended the ADEA to be the exclusive remedy for claims of age discrimination in employment.").

Accordingly, the Court will grant Defendants' motion to dismiss Count II of Plaintiff's amended complaint without prejudice.

E. LEAVE TO AMEND

In his brief in opposition to Defendants' motion to dismiss, Plaintiff has requested leave to amend his pleading. (Doc. No. 12 at 5.) The Court observes that Plaintiff previously filed an amended complaint in this action as a matter of course. Thus, Federal Rule of Civil Procedure 15(a) instructs that he may amend his pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). To obtain leave of court, Local Rule 15.1(a) requires that the plaintiff file a properly supported motion to amend his pleading together with an attached copy of the proposed pleading. L.R. 15.1(a). Although the Federal Rules of Civil Procedure counsel that "[t]he court should freely give leave when justice so requires," Fed. R.

Civ. P. 15(a)(2), leave may be denied where "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." Lake v. Arnold, 232 F.3d 360, 374 (3d Cir. 2000) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Significantly, the Third Circuit has held that the "failure to provide a draft amended complaint" is also "an adequate basis on which [a district] court [may] deny" leave to amend. Arnold, 232 F.3d at 374; see Ramsgate Court Townhome Ass'n v. W. Chester Borough, 313 F.3d 157, 161 (3d Cir. 2002) (holding that the district court did not abuse its discretion by refusing plaintiff's request for leave to amend its complaint in a single sentence in its oppositional brief to defendant's motion to dismiss where the plaintiff neither filed a motion to amend nor provided the district court with a proposed amended complaint).

Guided by these benchmark principles, and recognizing that this action reflects Plaintiff's third unsuccessful attempt at pursuing claims of race and age discrimination arising out of the same set of operative facts, the Court finds that the exercise of its discretion in this context calls for the denial of Plaintiff's request for leave to amend his pleading, without prejudice to the Plaintiff's filing of a motion for leave to file a curative amended pleading together with a proposed second amended complaint in accordance with Local Rule 15.1(a). Specifically, given the Court's disposition of Plaintiff's claims in this Memorandum, Plaintiff may move for leave to amend his pleading only with regard to asserting claims under the ADEA and Section 1981 through Section 1983 against Defendant Deborah Nesbella.

**IV.   CONCLUSION**

Based upon the foregoing, the Court will grant Defendants' motion to dismiss Plaintiff's amended complaint. (Doc. No. 8.) An appropriate Order follows.

                                          s/ Yvette Kane
                                          Yvette Kane, District Judge
                                          United States District Court
                                          Middle District of Pennsylvania